## PROVIDENT SAVINGS BANK & TR CO v VOLHARD et

Ohio Appeals, 1st Dist, Hamilton Co

Decided Jan 13, 1936

Walter W. Schwaab, Cincinnati, for plaintiff.

Spangenberg & Spangenberg, Cincinnati, for the estate of Walter Volhard.

Assur & Durr, Cincinnati, for Anita B. Volhard.

Marble & Vordenberg, Cincinnati, and James F. Conway, Jr., Cincinnati, for Annie Hoffmann.

Charles M. Leslie, Cincinnati, for Grace Donough, Viola Volhard, Joseph P. Scheve and Albert Steinkamp.

## OPINION

### By MATTHEWS, J.

This case comes to this court on appeal from the Court of Common Pleas of Hamilton County.

The plaintiff is the trustee under Item 5 of the last will and testament of William Volhard, deceased, and seeks the instructions of the court in regard to the true construction of such will. The decedent left surviving him his son Walter W. Volhard and his adopted daughter Annie Hoffmann. Since the death of William Volhard, the testator, his son has died testate. The defendants in this case are Annie Hoffman, the adopted daughter, and those claiming through Walter W. Volhard, the son, and a specific legatee, who will not be affected by the decision in any event.

As we view it, the only provisions of the will that bear upon the question presented are Items 4, 5, 6 and 7. These are:

"Item 4. Forty (40%) percent of the residue and remainder of my estate after all debts and claims of administration are paid, and all of my interest in the Eagle Counter and Leather Company and The Acme Tanning Company, also my residence, wherever it may be located, I give, devise and bequeath to my son, Walter W. Volhard and his heirs, to have and to hold forever.

"Item 5. Sixty (60%) percent of said residue of my estate, not including my interest in the Eagle Counter and Leather Company and The Acme Tanning Company, I give to the Provident Savings Bank & Trust Company of Cincinnati to be held by it in trust for my said son until he becomes forty (40) years of age, when said Provident Savings Bank & Trust Company shall turn over to him the total sixty (60%) percent so held in trust for him; he to receive quarterly all interest, dividends or other income from said sixty (60%) percent, after deducting all lawful expenses caused by the management of my said estate.

"Item 6. In case of my said son's death before mine, without leaving issue of his body, the above trust shall not take effect and I give, devise and bequeath all of his share as stated in Items Four and Five (4 and 5) to the above named Annie Hoffmann, if alive, less the amount set out in Item 7 below.

"Item 7. In case of my said son's death before mine I give and bequeath to his widow, if still a widow at my death, the sum of Ten Thousand ($10,000) Dollars."

In Item 2 the testator referred to the adoption of Annie Hoffman, recited the adoption "was declared null and void by

her parents" and then gave her $15,000 "in full of any and all claims that she and her heirs may have or may have had on account of said adoption."

Walter W. Volhard died before he reached the age of forty years.

The extraneous evidence as well as the terms of the will itself shows that the testator had affection for and regarded as objects of his bounty both Annie Hoffmann and Walter W. Volhard. There is evidence also indicating that Walter W. Volhard was improvident and dissipated to a degree and that the testator sought to protect him against those traits and habits by creating the trust.

It is the contention of the defendants claiming through Walter W. Volhard that he acquired a vested estate under Item 5, and that, therefore, as his representatives they are entitled to receive the corpus of the estate created by that item from the trustee. On the other hand, Annie Hoffmann contends that the estate never vested and also that in any event it is the import of the terms of the will that she should take upon the death of Walter W. Volhard before reaching the age of forty years.

Of course, the fundamental rule for the construction of wills is that the lawful intention of the testator as expressed must prevail, and in determining that intention the court is admonished by all the adjudicated cases to assume a non-technical mental attitude, to think not as a lawyer thinks, but as far as possible, as the testator himself thought. All other rules of construction are secondary—and unimportant if the intention of the testator is expressed clearly, no matter what words are used.

Now if these provisions of this will are read as of the date they were written, as they should be read, no ambiguity or uncertainty arises at all. After making specific bequests, he gave his entire estate to his son by Items 4 and 5, if his son survived him. To guard against intestacy, in the event his son died before him without issue, he provided that Annie Hoffman should take the property that the son would have taken had he survived. While apparently Annie Hoffmann would have inherited the estate if the son died without issue before the testator, it is clear from the terms of the will that the testator had some doubt as to whether she still occupied the status of an adopted daughter, and that was an additional reason for that provision. And as his son's widow would inherit nothing from the testator, he provided by Item 7 that in the event the son's death occurred before his, she would receive $10,000.

Had the son lived until the termination of the trust created by Item 5, no one would have suggested that this will did not constitute a perfectly clear and complete disposition of this estate. Why should his death before that change the situation?

It is said that the will contains a bequest by implication to Annie Hoffmann of the trust fund conditional upon the son's death during the trust period. A careful reading of the entire will fails to disclose any word or combination of words which convey that meaning. If such an intent is to emanate from this will, it must result from an "invisible radiation" from the whole text notwithstanding no word or combination of words can be pointed out which express such an intention.

It is urged that the authorities recognize bequests by implication; and that is true but language must be found in the will itself that under the circumstances express that intention. Counsel relies on **Crane v Doty, 1 Oh St 279,** in which the court at page 284 said:

"From a careful examination of all the authorities within our reach, bearing upon this question, we are led to the conclusion, that, in order to raise an estate by implication, the two following circumstances must concur: First: an interest or estate in the property less than the whole, must be created expressly by the will, in order that it may appear that the testator had the disposition of the property in his mind. Second: the person to take by implication, must be named or described in connection with the raising of such interest or estate. The familiar example put in the elementary books is a devise of lands by a man to his heir after the death of his wife. Here an evident intention appears to postpone the heir until the death of his wife, and she will therefore take a life estate by implication. But if the devise were to a stranger, instead of the heir, the same implication would not arise, for it would not sufficiently appear that he did not intend the heir to take the estate in the meantime. Indeed it is always a question of intention to be derived from the words of the will; but it must appear from the will that the testator has attempted to dispose of the property, and in such disposition, has used the name of the person to take by impli-

cation, so as to render it at least highly probable that he intended such person to take the interest in the same property that he has not disposed of by words."

Does this will supply the requirements of Crane v Doty, supra?

To say that the testator disposes of "less than the whole" in this case begs the question of whether Item 5 created an equitable vested estate in the son from the date of the testator's death. The first requirement therefore is not present. The second requirement is that the person to take by implication must be mentioned "in connection with the raising of such interest or estate," and the illustration given in the quotation shows what the court meant by that language. Annie Hoffman was not mentioned at all in connection with the raising of the estate in favor of the son. She was mentioned in the event the estate in favor of the son failed because of his death without issue during the testator's lifetime, and in that connection alone. And the will stated very specifically the purpose in mentioning her name.

In Crane v Doty, supra, the court held that there was no bequest by implication and that, therefore, a daughter inherited notwithstanding an express intention to exclude her.

If this will raises an inference that the testator intended Annie Hoffmann to be the beneficiary of Item 5 in the event Walter W. Volhard died after the testator's death and before reaching forty years of age, it must arise because he provided by Item 6 that she should be the beneficiary if Walter W. Volhard died before the testator and at a time when the testator still had the power to revoke the will. Until the testator's death the will was ambulatory. It does not seem to us that the making of a provision revocable by the testator has any tendency to indicate an intention to make a provision irrevocable by him, no matter what the conditions might be at the time when the provision would become operative.

We find nothing in this will indicating an intention to make Annie Hoffmann an executory legatee of this trust fund in the event of the death of the son after the death of the testator.

The question then must be considered as to whether the son's estate in the corpus vested upon the death of the testator or was postponed until he arrived at the age of forty years.

Seeking the meaning of the testator as expressed in Item 5, without being influenced by any rules of construction, it seems clear that the only thing withheld from Walter W. Volhard by its terms was the control of the property until he reached the age of forty years. Until then he had every beneficial interest. Upon reaching that age, that which was withheld—the control—was to be surrendered to him. There seems to be nothing in the language indicating that anything other than the management was to be postponed. The corpus was given to The Provident Savings Bank & Trust Company "to be held by it in trust for my said son" and for no one else and it—the "total sixty percent so held in trust for him"—was to be turned over to him. No condition or proviso of any sort is stated.

There are innumerable cases involving the construction of wills all turning on the language of the specific will. It would be useless to comment at length upon them. The principle that controls is correctly stated in the syllabus in **Linton v Laycock, 33 Oh St 128,** from which we quote:

"2. The controlling principle in the construction of wills, is the ascertainment of the intention of the testator; but where the intention remains in doubt, resort must be had to the settled rules of construction for aid in the solution of the difficulty.

"3. The law favors the vesting of estates, and in the construction of devises of real estate, the estate will be held to be vested in the devisee at the death of the testator, unless a condition precedent to such vesting is so clearly expressed that the estate can not be regarded as so vested, without directly opposing the terms of the will. To this end, words of seeming condition will, if they can bear that construction, be held to have the effect of postponing the right of possession only, and not the present right to the estate.

Applying this principle to this case, we find that Walter W. Volhard was bequeathed a vested estate by Item 5, subject to no condition, and that upon his death after the testator's death and before reaching the age of forty years, it passed to his personal representatives if he died intestate, and if he died testate, to the beneficiary or beneficiaries named therein.

A decree may be presented in accordance with this opinion.

Decree accordingly.

ROSS, PJ, and HAMILTON, J, concur.